# NO. 12-15-00053-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

|  |  |  |
|---|---|---|
| *IN THE INTEREST OF J.S.,* | § | *APPEAL FROM THE 354TH* |
| | § | *JUDICIAL DISTRICT COURT* |
| *A CHILD* | § | *RAINS COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

C.S. and S.A. appeal the termination of their parental rights. On appeal, they challenge the order of termination. We affirm.

## BACKGROUND

C.S. and S.A. are the parents of J.S., born March 12, 2014. On April 2, 2014, the Department of Family and Protective Services (the Department) filed an original petition for protection of the child, for conservatorship, and for termination of C.S.'s and S.A.'s parental rights. The Department was appointed temporary managing conservator of the child, and C.S. was appointed temporary possessory conservator with limited rights and duties.

At the conclusion of the trial on the merits, the jury found, by clear and convincing evidence, that C.S.'s and S.A.'s parental rights should be terminated. Thereafter, the trial court found, by clear and convincing evidence, after the jury verdict that C.S. had engaged in one or more of the acts or omissions necessary to support termination of her parental rights under subsections (D), (E), and (O) of Texas Family Code Section 161.001(1). Further, the trial court found, by clear and convincing evidence, that S.A. had engaged in one or more of the acts or omissions necessary to support termination of his parental rights under subsections (D), (E), and (O) of Texas Family Code Section 161.001(1). The trial court found that termination of the parent-child relationship between C.S., S.A., and J.S. was in the child's best interest. Based on

these findings, the trial court ordered that the parent-child relationship between C.S., S.A., and J.S. be terminated. This appeal followed.

<u>**MOTION FOR CONTINUANCE**</u>

In his second issue, S.A. argues that the trial court abused its discretion in denying his motion for continuance.

**<u>Standard of Review</u>**

The denial of a motion for continuance is reviewed under an abuse of discretion standard. ***Garner v. Fidelity Bank, N.A***., 244 S.W.3d 855, 858 (Tex. App.—Dallas 2008, no pet.). The denial will be reversed only if the trial court's action was arbitrary, unreasonable, or without reference to any guiding rules and principles. ***Id.*** (citing ***BMC Software Belg. N.V. v. Marchand***, 83 S.W.3d 789, 800 (Tex. 2002)).

A motion for continuance must include an affidavit stating sufficient cause. TEX. R. CIV. P. 251. Generally, when a movant fails to comply with Rule 251's requirement that the motion for continuance be "supported by affidavit," an appellate court must presume that the trial court did not abuse its discretion in denying the motion. ***Villegas v. Carter***, 711 S.W.2d 624, 626 (Tex. 1986).

The Texas Family Codes provides as follows:

> A parent whose rights are subject to termination in a suit affecting the parent-child relationship and against whom criminal charges are filed that directly relate to the grounds for which termination is sought may file a motion requesting a continuance of the final trial in the suit until the criminal charges are resolved. The court may grant the motion only if the court finds that a continuance is in the best interest of the child.

*See* TEX. FAM. CODE ANN. § 161.2011(a) (West 2014).

**<u>Analysis</u>**

S.A. filed a motion for continuance with the court on February 17, 2015, the first day of trial after the jury had been impaneled. He cited Section 161.2011(a) as the reason for his motion. He alleged that at the time of trial, there were pending charges against him in Van Zandt County for injury to a child based on allegations directly related to the grounds for termination in this case. Therefore, S.A. stated, a continuance was in the best interest of the child. S.A. did not present any evidence on the motion and the trial court denied it.

The record does not establish when S.A.'s criminal case would be resolved because S.A. did not present any evidence on the issue. *See In re L.T.*, 02-10-00094-CV, 2011 WL 582710, at *10 (Tex. App.—Fort Worth Feb. 17, 2011, no pet.) (mem. op.) (no abuse of discretion in denying motion for continuance where, among other factors, parent presented no evidence to show when pending criminal charges would be resolved). Further, S.A.'s motion for continuance was not supported by an affidavit as required by Rule 251. Because S.A. did not present any evidence regarding when his pending charges would be resolved and his motion for continuance was not supported by an affidavit, the trial court did not abuse its discretion in denying the motion. *See* TEX. FAM. CODE ANN. § 161.2011(a); *Villegas*, 711 S.W.2d at 626; *Garner*, 244 S.W.3d at 858. Accordingly, S.A.'s first issue is overruled.

### JURY PANEL

In C.S.'s fifth issue and S.A.'s third issue, they contend that the trial court erred by failing to seat the first twelve eligible jury panelists and that the error was fundamental. The parents argue that the trial court violated Texas Rule of Civil Procedure 234.[1] As a predicate to presenting a complaint on appeal, the complaining party must have preserved the error at trial by a proper request, objection, or motion stating the grounds for the ruling that the party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, and then securing a ruling on the request, objection, or motion. *See* TEX. R. APP. P. 33.1(a)(1)(A), (2); *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). Appellate review of potentially reversible error in a parental termination case never presented to a trial court undermines the legislature's dual intent to ensure finality in these cases and expedite their resolution. *In re B.L.D.*, 113 S.W.3d 340, 353 (Tex. 2003). A court of appeals must not retreat from error preservation standards to review unpreserved constitutional error in parental rights termination cases. *See id.* at 355.

Moreover, "[f]undamental error survives today only in rare instances in which the record shows on its face that the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or Constitution of Texas." *Cent. Educ. Agency v. Burke*, 711 S.W.2d 7, 8 (Tex. 1986); *see Pirtle v. Gregory*, 629 S.W.2d 919,

---

[1] Rule 234 states that "[w]hen the parties have made or declined to make their peremptory challenges, they shall deliver their lists to the clerk. The clerk shall, if the case be in the district court, call off the first twelve names on the lists that have not been erased. . . ; those whose names are called shall be the jury."

3

920 (Tex. 1982). Fundamental error is nonwaivable and may be raised for the first time on appeal. *Johnson v. Ozim*, 804 S.W.2d 179, 182 (Tex. App.—Houston [14th Dist.] 1991, writ denied).

The statutory violation of which C.S. and S.A. complain is an error in the procedure of striking, excusing, or impaneling the jury. It is well settled in Texas law that such procedural issues are waivable. *See, e.g.*, *Montez v. Thaler*, No. 2:09-CV-051, 2012 WL 487094, at *18 (N.D. Tex. Jan. 27, 2012) (challenge to impanelment of jurors waived if no objection); *Sendejar v. Alice Physicians and Surgeons Hosp., Inc.*, 555 S.W.2d 879, 886 (Tex. Civ. App.—Tyler 1977, writ ref'd n.r.e.) (challenge to improper excuses by sheriff, district clerk, and others waived if not presented prior to time jury was selected); *Texas Elec. Serv. Co. v. Yater*, 494 S.W.2d 271, 274 (Tex. Civ. App.—El Paso 1973, writ ref'd n.r.e.) (using district court panel instead of proper county court panel was "matter of ready waiver").

Here, C.S. and S.A. did not complain to the trial court that it had failed to seat the first twelve jury panelists. Consequently, C.S. and S.A. have waived their complaint. *See* TEX. R. APP. P. 33.1(a)(1)(A), (2). C.S.'s fifth issue and S.A.'s third issue are overruled.


## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights embodies fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.–Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.–El Paso 1998, no pet.).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West 2014); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the first subsection of the statute. TEX. FAM. CODE ANN. § 161.001(1) (West 2014); *Green v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.–El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(2) (West 2014); *In re J.M.T.*, 39 S.W.3d at 237. Both elements must be established by clear and

4

convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014). The burden of proof is upon the party seeking the deprivation of parental rights. *In re J.M.T.*, 39 S.W.3d at 240.

## STANDARD OF REVIEW

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.–Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id*.

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id*. at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.–Houston [1st Dist.] 1997, pet. denied).

5

In C.S.'s second issue and as a part of S.A.'s first issue, they argue that the evidence is legally and factually insufficient to support a finding that they engaged in conduct, or knowingly placed the child with persons who engaged in conduct, that endangered the child's physical or emotional well being.

**Applicable Law**

The court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has engaged in conduct, or knowingly placed the child with persons who engaged in conduct, that endangers the physical or emotional well being of the child. TEX. FAM. CODE ANN. § 161.001(1)(E) (West 2014). The specific danger to the child's well being need not be established as an independent proposition, but may instead be inferred from parental misconduct. *Tex. Dep't of Human Svcs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re J.J.*, 911 S.W.2d at 440. Scienter is not required for an appellant's own acts under Section 161.001(1)(E), although it is required when a parent places her child with others who engage in endangering acts. *In re U.P.*, 105 S.W.3d 222, 236 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Finally, the need for permanence is a paramount consideration for the child's present and future physical and emotional needs. *In re N.K.*, 99 S.W.3d 295, 301 n.9 (Tex. App.—Texarkana 2003, no pet.); *In re M.D.S.*, 1 S.W.3d at 200.

"Endanger" means to expose to loss or injury or to jeopardize. *Boyd*, 727 S.W.2d at 533; *In re D.M.*, 58 S.W.3d 801, 811 (Tex. App.—Fort Worth 2001, no pet.). It is not necessary that the conduct be directed at the child or that the child actually suffers injury. *Boyd*, 727 S.W.2d at 533; *In re J.J.*, 911 S.W.2d at 440. Subsection (E) requires us to look at the parent's conduct alone, including actions, omissions, or the parent's failure to act. *In re D.J.*, 100 S.W.3d 658, 662 (Tex. App.—Dallas 2003, pet. denied); *In re D.M.*, 58 S.W.3d at 811. Termination under subsection (E) must be based on more than a single act or omission. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). A voluntary, deliberate, and conscious "course of conduct" by the parent that endangers the child's physical and emotional well being is required. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d at 634.

A parent's use of narcotics and its effect on his ability to parent may qualify as an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *see also In re*

***R.W.***, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). A parent's repeated engagement in illegal drug activity or repeatedly associating with known criminals after agreeing not to do so in a service plan for reunification with her child may be considered in an analysis of whether clear and convincing proof exists of voluntary, deliberate, and conscious conduct that endangered the well being of her child. *See **In re T.N.***, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.). As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well being of a child. ***In re M.R.J.M.***, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.); ***In re R.W.***, 129 S.W.3d at 739.

In a civil case, a fact finder may draw reasonable inferences from a party's assertion of the privilege against self-incrimination. ***Lozano v. Lozano***, 52 S.W.3d 141, 150 (Tex. 2001). Refusal to answer questions by asserting the privilege is relevant evidence from which the fact finder in a civil action may draw whatever inference is reasonable under the circumstances. ***In re C.J.F.***, 134 S.W.3d 343, 352-53 (Tex. App.—Amarillo 2003, pet. denied).

If a parent abuses or neglects the other parent or a child, that conduct can be used to support a finding of endangerment even against a child who was not yet born at the time of the conduct. ***Id.*** at 351. Furthermore, a parent's failure to remove herself and her child from a violent relationship and exposing the child to an abusive partner endangers the physical or emotional well being of the child. ***In re I.G.***, 383 S.W.3d 763, 770 (Tex. App.—Amarillo 2012, no pet.); ***In re M.V.***, 343 S.W.3d 543, 547 (Tex. App.—Dallas 2011, no pet.); ***In re M.N.G.***, 147 S.W.3d 521, 538-39 (Tex. App.—Fort Worth 2004, pet. denied).

**The Evidence**

The investigation of this family began approximately one year before J.S. was born. On January 30, 2013, the Department received four separate referrals regarding B.A., J.S.'s older half-brother. At the time, B.A. was seven weeks old. The Department's investigator located B.A. at his paternal grandmother's apartment along with his father, S.A., his mother, K.F., and C.S. After a cursory visual and physical examination, the investigator immediately called emergency services and B.A. was transported to Children's Medical Center in Dallas.

B.A. underwent a CAT scan of his head, a dedicated skeletal survey, x-rays of his entire body, and laboratory studies. According to the pediatrician at Children's Medical Center, the tests showed that B.A. sustained thirty-three fractured bones, including at least twenty different rib fractures on both sides of his chest wall, some healing and some fresh, possibly caused by

squeezing or compressing; a fracture of his right humerus no more than seven days old, caused by a bending or twisting type of force; and fractures of the second and fourth fingers on his left hand. The tests also showed a fracture of B.A.'s left shin bone near the knee, which is almost always associated with an inflicted injury; a large displaced, healing fracture of his left femur, meaning that the pieces of the bone were pointing in different directions, caused by someone twisting or bending the femur; a fracture of his left ulna; and an abnormality or injury to his scapula. Finally, the x-rays and CT scans showed multiple fractures of the right parietal bone of B.A.'s skull, "broken into pieces," and a linear fracture to the left parietal bone. B.A.'s skull fractures indicated two "violent impact-type force[s] onto a flat surface." He also suffered a possible burn injury on one of his index fingers, and a centimeter tear of his anus along with bruising, possibly caused by penetration.

According to the pediatrician, B.A. did not have a form of bone disease commonly referred to as "brittle bone disease." The pediatrician believed that B.A.'s injuries were the result of child physical abuse. He said that B.A.'s injuries were serious and life threatening. In the pediatrician's opinion, anyone who saw B.A. being moved in any way would be able to see that he was in pain and needed medical attention. The Department conducted an emergency removal of B.A. based on the physician's reports and its own investigation. S.A., K.F., and S.A.'s mother, L.A., were indicted in connection with B.A.'s injuries. C.S. was not charged although she was living with S.A. and K.F. at the time the injuries occurred.

Jennifer Syrus, a Department investigator, testified that she received a referral for J.S. on the date of his birth for neglectful supervision and physical abuse. The main concern was the injuries sustained by B.A. approximately one year earlier. According to Syrus, C.S. told her that she planned to live with her grandfather when she and the child were discharged from the hospital. However, S.A. told Syrus that C.S. and the child were going to the home that he shared with his mother. C.S. then agreed to S.A.'s plan. She admitted that she had lied about going to live with her grandfather so she could leave the hospital with J.S.

Syrus explained to C.S. that if she were going home with S.A., she would not be discharged with the child. The next day, Syrus offered to make arrangements for C.S. to go to a shelter with the child and to transport them. This offer was made out of S.A.'s presence. C.S. declined. She admitted that during the case, her child's attorney ad litem and her caseworker consistently "begged" her to go to a shelter or other housing with J.S. C.S. was told, repeatedly,

that she could not visit or have her son returned unless she left S.A. She refused, stating that she loved S.A., believed that he was innocent of the charges relating to B.A.'s injuries, and was going to stand by him.

C.S. stated that she had lived with S.A. and K.F. in a camper/fifth wheel before, and after, J.S.'s birth. She admitted having a relationship with S.A. before J.S. was born. C.S. testified that S.A. had a temper, but said that he was violent, not "explosive." S.A. smoked marijuana every day and K.F. smoked marijuana two to three times a week, even after B.A. was born. C.S. never tried to get B.A. out of the fifth wheel while they were smoking. She stated that S.A. "[was not] exactly [ ] violent" with B.A. However, she related at least three incidents in which S.A. was "too aggressive" with B.A., including holding him up and shaking him. S.A. changed B.A.'s diaper in the back bedroom with the curtain closed, and became angry if B.A. would not stop crying. She admitted that sometimes B.A. would scream as if he was in pain when K.F. and S.A. changed him. However, she did not do anything to help B.A., and did not feel that there was any reason to intervene.

At the time of trial, C.S. admitted that S.A. still used drugs, including methamphetamine and marijuana. She was currently living with three persons who had criminal and Department history, including S.A., in violation of her service plan. S.A. was called to testify, but answered "I plead the Fifth" to every question, including questions about his age, his address, the reason he was in court, and his compliance with his service plan. S.A.'s testimony, or lack thereof, consists of thirty-five pages of the record.

**Conclusion**

Viewing the evidence in the light most favorable to the finding, the jury could have determined that C.S. continued to have a relationship with S.A., failed to help or protect B.A. from his parents while living with them, and demonstrated an inability to put J.S.'s needs before her own. Therefore, the jury could have concluded that C.S. engaged in conduct that endangered J.S.'s physical or emotional well being. *See In re I.G.*, 383 S.W.3d at 770; *In re T.N.*, 180 S.W.3d at 383. S.A. was currently under indictment for injury to a child as a result of B.A.'s injuries. Because he refused to explain B.A.'s injuries, the fact finder could have drawn reasonable inferences from his refusal to do so, including that he was the perpetrator. *See Lozano*, 52 S.W.3d at 150. Moreover, the evidence showed that he still used narcotics.

Therefore, the jury could have concluded that S.A. engaged in conduct that endangered J.S.'s physical or emotional well being. *See id.*; ***In re C.J.F.***, 134 S.W.3d at 351.

C.S. did not injure B.A. or J.S., and did not believe that S.A. injured B.A. But this evidence is not so significant that a reasonable trier of fact could not have reconciled this evidence in favor of its finding and formed a firm belief or conviction that C.S. and S.A. engaged in conduct, or knowingly placed the child with persons who engaged in conduct, that endangered his physical or emotional well being. Therefore, we hold that the evidence is legally and factually sufficient to support termination of C.S.'s and S.A.'s parental rights under Section 161.001(1)(E). Accordingly, we overrule C.S.'s second issue and that portion of S.A.'s first issue regarding Section 161.001(1)(E).

### BEST INTEREST OF THE CHILDREN

In C.S.'s fourth issue and as part of S.A.'s first issue, they contend that the evidence is legally and factually insufficient to support a finding that termination of their parental rights is in the best interest of the child. In determining the best interest of the child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. ***Holley v. Adams***, 544 S.W.2d 367, 371-72 (Tex. 1976).

This list is not exhaustive, but simply indicates considerations that have been or could be pertinent. ***Id.*** However, the best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. ***In re D.M.***, 58 S.W.3d at 814. The ***Holley*** test focuses on the best interest of the child, not the parent's best interest. ***Dupree v. Texas Dep't of Protective & Regulatory Servs.***, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). We apply the ***Holley*** factors below.

**The Evidence**

In April 2014, C.S. and S.A. were ordered to follow a service plan. S.A. did not complete his service plan, which included a counseling requirement, and refused to submit to

random drug testing. At some point, S.A. refused to comply with his service plan. However, the court ordered him to submit to drug testing in December 2014. Based on the results, the caseworker was concerned that he was using illegal drugs. C.S. did not complete her service plan, which also included a counseling requirement. S.A. and C.S. completed a parenting class. However, the caseworker could not determine if they applied any of the skills they learned because they were not allowed contact with J.S. The caseworker was unable to confirm that S.A. and C.S. did not reside with persons without a criminal or Department history or if they supervised children under the age of eighteen. She was not allowed in their residence, and was concerned about their living situation because persons with criminal and Department histories resided there.

C.S. and S.A. saw two licensed professional counselors for a total of three sessions. However, they were terminated from counseling for nonattendance. Donald Eugene Winsted, III, Ph.D., a licensed psychologist, testified that he conducted a psychological evaluation of C.S. on May 21, 2014. He stated that his main concern was C.S.'s defensiveness, and believed that it would be a challenge to help her parent and difficult for her to receive constructive feedback in order to change. According to Dr. Winstead, C.S. had some good parenting attitudes, but some of her answers suggested a high risk that she would value her own needs over that of her child, may be easily threatened if her parenting was questioned, may expect a child to be strictly obedient, and may be threatened by a child's attempt to establish power and independence. Dr. Winstead believed C.S.'s prognosis for being able to benefit from services was between fair and guarded, and he recommended that she participate in individual counseling, parent training, and couples counseling.

According to the Department's caseworker, J.S. will remain in the foster home with B.A. and he will be adopted by that family if the parents' rights are terminated. J.S. is "very" bonded to the foster parents, and recognizes his brother as his sibling. He is very affectionate towards his foster parents. The caseworker testified that the foster home is the safest and best placement for the child. The caseworker believed it was in J.S.'s best interest to terminate C.S. and S.A.'s parental rights, and be adopted by his foster family. The investigator for B.A.'s case stated that, in his opinion, it would not be in J.S.'s best interest to go to a home with S.A. or C.S. present.

The evidence shows that C.S. refused to leave S.A. even when it was explained to her that she could not reunite with or visit J.S. if she remained with S.A. Neither parent took

11

advantage of counseling offered by the Department to assist them in parenting J.S. However, C.S. explained that she did not have transportation to complete counseling. C.S.'s only plan for J.S. was to take him to live with three persons who had extensive criminal and Department histories. Her explanations for refusing to seek help for B.A. were inconsistent and reasonably could have been considered incredible by the fact finder.

S.A.'s sister and stepfather testified and both offered to be a placement for J.S. However, S.A.'s sister allowed S.A. to babysit her children and did not believe he abused B.A. S.A.'s stepfather also did not believe that S.A. hurt B.A. The stepfather admitted he had a violent criminal history and that he had abused S.A. as a child.

## Conclusion

Viewing the evidence relating to the *Holley* factors in the light most favorable to the finding, we hold that a reasonable fact finder could have formed a firm belief or conviction that termination of C.S.'s and S.A.'s parental rights is in the best interest of the child. C.S. argues that she did not abuse B.A. and that this basis for termination of her parental rights (B.A.'s injuries while she lived with S.A. and K.F.) is attenuated at best. However, a parent's failure to remove herself and her child from a violent relationship or expose her child to an abusive partner endangers the physical and emotional well being of a child. *See In re I.G.*, 383 S.W.3d at 770; *In re M.V.*, 343 S.W.3d at 547; *In re M.N.G.*, 147 S.W.3d at 538-39. The jury could have concluded that C.S.'s knowledge of S.A.'s violence and physical abuse of B.A. and her failure to leave S.A. supports a determination to terminate her parental rights.

S.A. contends that at the time of trial, it was not proven that he was the perpetrator of B.A.'s injuries. However, a fact finder may draw reasonable inferences from a party's assertion of the privilege against self-incrimination. *See Lozano*, 52 S.W.3d at 150. Therefore, the jury was allowed to infer from S.A.'s refusal to explain B.A.'s injuries that he caused them. This inference supports the jury's decision to terminate S.A.'s parental rights.

We hold that the evidence is legally and factually sufficient to support the jury's finding that termination of C.S. and S.A.'s parental rights is in the best interest of the child. Accordingly, we overrule C.S.'s fourth issue and that portion of S.A.'s first issue regarding the best interest of the child.

12

## DISPOSITION

Having overruled C.S.'s second, fourth, and fifth issues, we ***affirm*** the judgment of the trial court pertaining to her.[2]  Further, having overruled S.A.'s first issue regarding Section 161.001(1)(E) and the best interest of the child along with his second and third issues, we ***affirm*** the judgment of the trial court pertaining to him.[3]

Opinion delivered August 12, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

---

[2] Because we have concluded that the evidence is legally and factually sufficient to support termination of C.S.'s parental rights under subsection (1)(E), we need not address her first and third issues regarding subsections (1)(D) and (1)(O).  *See* TEX. FAM. CODE ANN. § 161.001(1); TEX. R. APP. P. 47.1.

[3] Because we have concluded that the evidence is legally and factually sufficient to support termination of S.A.'s parental rights under subsection (1)(E), we need not address those portions of his first issue regarding subsections (1)(D) and (1)(O).  *See* TEX. FAM. CODE ANN. § 161.001(1); TEX. R. APP. P. 47.1.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 12, 2015**

**NO. 12-15-00053-CV**

**IN THE INTEREST OF J.S., A CHILD**

Appeal from the 354th District Court
of Rains County, Texas (Tr.Ct.No. 9674)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

By *per curiam* opinion.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*