**In the Interest of M.V., a Minor Child.**

No. 05–10–00034–CV.

Court of Appeals of Texas,
Dallas.

June 3, 2011.

W. Ty Wilson, Law Office of W. Ty Wilson, Plano, TX, for Appellant.

Steven Todd Hayden, Dallas, TX, for Appellee.

Before Justices MORRIS, MOSELEY, and FITZGERALD.

## OPINION

Opinion By Justice MOSELEY.

In this accelerated appeal, Mother complains of the trial court's order terminating her parental rights to M.V., her minor child.[1] She contends: (1) her appeal and statement of points were timely filed; (2) the evidence is insufficient to support termination; (3) venue in Collin County was improper; and (4) her due process rights were violated because she was not afforded counsel prior to relinquishing her parental rights. We conclude the evidence is sufficient to support termination and that appellant's remaining issues are either moot or not preserved. We affirm.

## I. BACKGROUND

The background facts are based on evidence in the record.

Mother and Father met and married in India in March 2007; they moved to the United States in August 2007. Mother became pregnant, and their child, M.V., was born on May 12, 2008. Father began abusing Mother verbally and physically during the pregnancy. They argued over family finances and Mother's salary; sometimes the arguments escalated to his pulling Mother's hair and hitting her with his fists.

The abuse continued after M.V. was born. On October 7, 2008, Father hit Mother with a telephone, knocking out two front teeth and fracturing her jaw. M.V. was in his crib at the time. Father was charged with aggravated assault. Dallas County Child Protective Services (CPS) became involved and offered Mother services, including shelter. Mother and M.V. spent two days in a shelter; however, at the urging of her parents and of Father, she and M.V. returned to their apartment.

Mother was pressured by her parents to return to India without M.V. On December 22, 2008, Mother signed an affidavit of voluntary relinquishment as to M.V., despite advice by CPS personnel over a one-week period not to do so. Mother then returned to India, leaving M.V. with CPS personnel. On December 23, 2008, the Collin County Unit of the Department of Family and Protective Services (the Department) filed a SAPCR seeking to be appointed M.V.'s temporary managing conservator.[2] M.V. was placed in foster care.

---

1. Father's parental rights to M.V. were also terminated, but he has not appealed that decision.

2. There is testimony that the Dallas County Department of Child Protective Services "initially tried to file in Dallas County, but upon filing in Dallas, it was discovered that the family actually lived in Collin County so then everything was switched back over to Collin County."

While Mother was in India, she obtained medical care for her injuries. Father and her parents urged Mother to sign an affidavit of non-prosecution, which she did. Mother returned to Dallas in June 2009, again began living with Father, and sought the return of M.V. However, later that month Father forced Mother to again return to India to prevent her from testifying at his trial.[3]

On July 28, 2009, while again under pressure from Father and her parents, Mother returned to the United States and resumed living with Father. She visited M.V. weekly for one hour beginning in September 2009.

On October 1, 2009, the Department filed a First Amended Petition, seeking termination of Mother's and Father's parental rights. Beginning about November 1, 2009, three weeks before this termination trial began, Mother moved into a shelter and began parenting classes and counseling.

The jury found Mother violated family code sections 161.001(1)(D), (E), (K), and (O) and found termination of Mother's parental rights to be in M.V.'s best interest. *See* TEX. FAM.CODE ANN. § 161.001(1)(D), (E), (K), & (O), (2) (West Supp.2010). The trial court appointed the Department permanent managing conservator of M.V. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

A trial court may terminate the parent-child relationship if the fact finder finds by clear and convincing evidence that: (1) a parent committed one or more of the enumerated statutory acts in section 161.001(1) of the family code; and (2) termination is in the best interest of the child. *Id.* § 161.001(1), (2). The jury

made affirmative findings as to both elements required for termination. In her second issue, Mother contends the evidence is legally and factually insufficient to support these findings.

### A. Applicable Law and Standard of Review

"Clear and convincing evidence" is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2008); *see In re J.F.C.*, 96 S.W.3d 256, 264 (Tex.2002).

 On appeal, we apply a standard of review that reflects this burden of proof. *In re J.F.C.*, 96 S.W.3d at 264–66. When reviewing the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the finding to determine whether the fact finder could reasonably have formed a firm belief or conviction the finding was true. *Id.* at 266. In doing so, we assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved or found to be incredible. *Id.* However, we must also consider any undisputed evidence contrary to the finding in our analysis. *Id.*

 In conducting a factual sufficiency review, we must give due consideration to any evidence the fact finder could reasonably have found to be clear and convincing. *Id.* We consider whether the disputed evidence is such that a reasonable fact finder could not have resolved the disputed evidence in favor of its finding. *Id.* If the disputed evidence is so significant that a fact finder could not reasonably

---

**3.** Father's criminal trial was postponed and scheduled for December 2009, after this trial.

have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

## B. Discussion

### 1. Courses of Parental Conduct

#### a. section 161.001(1)(D), (E)

■ The jury found that Mother knowingly placed or knowingly allowed M.V. to remain in conditions or surroundings which endanger his physical or emotional well-being and that Mother engaged in conduct or knowingly placed M.V. with persons who engaged in conduct which endangers M.V.'s physical or emotional well-being. *See* TEX. FAM.CODE ANN. § 161.001(1)(D), (E). "Endanger" means to expose to loss or injury, to jeopardize; it is not necessary that the conduct be directed at the child or that the child actually suffers injury. *See Tex. Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex.1987).

There was testimony concerning several instances of abuse directly involving M.V. First, in October 2007, when she was two months pregnant, Father hit Mother in the head and on the back with his fists and kicked her in the stomach several times. Although she screamed in pain and begged him not to hit her, he finally punched her hard in the mouth. Father was jailed but was bailed out by a friend; he came home promising not to hit her again. Father forced Mother to write an affidavit of non-prosecution. Second, on September 4, 2008, Mother was holding M.V. and trying to call 9–1–1 because she and Father were in a "violent argument." Father grabbed the phone, threw it across the bedroom to prevent the call, then grabbed Mother by the throat and pushed her against the wall. Third, on October 6, 2008, Father slapped Mother violently while she was feeding M.V. She grabbed the phone and called 9–1–1 while still holding M.V. and pleading with Father to stop. Fourth, on October 7, 2008, Mother returned home after spending $1.50 for soap for M.V.'s hygiene. Angry that she had spent money without his permission, Father hit her with a telephone, knocking out two front teeth and fracturing her jaw. M.V. was in his crib at the time. This is the incident for which Father was charged with aggravated assault.

There was evidence that during some of these incidents M.V. was not hurt, but Mother returned to living with Father after these and other instances of domestic violence. Additionally, when she signed the affidavit of voluntary relinquishment, CPS personnel explained to Mother that because Father's parental rights not been relinquished, there was no assurance that M.V. could be kept out of Father's care.

There was also evidence that, since Mother's return in July 2009, Father had not hit her and was attending the Batter-er's Intervention Prevention Program (BIPP). Mother also testified that Father had "changed" and she would have to obey him if, later, he told her to return to their apartment with M.V. She answered "Yes" to the question, "And do you do everything your husband tells you to do?"

Mother's removal to the shelter three weeks before trial was described as "eleventh hour." Mother testified concerning her stay in the shelter and the resources offered by CPS in support of her responsibility to provide a "safe and stable home" for M.V. She testified she was working.

Applying the appropriate standards of review, we conclude the jury could have found by clear and convincing evidence that Mother engaged in the conduct enumerated in section 161.001(1)(D) and (E).

### b. section 161.001(1)(K)

■ The jury found Mother executed, before or after the suit is filed, an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by chapter 161. *See* TEX. FAM.CODE ANN. § 161.001(1)(K). It is undisputed Mother executed an such an irrevocable affidavit of relinquishment before suit was filed. The affidavit says, in part, "I freely, voluntarily, and permanently give and relinquish to the Department [of Family and Protective Services] all my parental rights and duties." There is no evidence Mother filed a motion to revoke the affidavit, or that it was revoked. Applying the appropriate standards of review, we conclude the jury could have found by clear and convincing evidence that Mother engaged in the conduct enumerated in section 161.001(1)(K).

### c. section 161.001(1)(O)

■ The jury found Mother failed to comply with a court order that specifically established the actions necessary for the parent to obtain the return of a child who has been in the conservatorship of the Department for not less than nine months as a result of the child's removal from the parent under chapter 262 for the abuse or neglect of the child. *Id.* § 161.001(1)(O).[4] The record includes safety plans agreed to by Mother in June 2009, which were court-ordered, that included counseling and domestic violence classes that Mother did not complete. Applying the appropriate standards of review, we conclude the jury could have found by clear and convincing evidence that Mother engaged in the conduct enumerated in section 161.001(1)(O).

### d. conclusion

Having rejected Mother's arguments concerning sufficiency of the evidence sup-

porting the jury's findings as to the courses of parental conduct grounds for termination, we resolve her second issue against her to this extent.

### 2. Best Interest of the Child

### a. best interest standard

■ Prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest. *Id.* § 263.307(a) (West 2008). There is also a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *See In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). The focus is on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.,* 907 S.W.2d 81, 86 (Tex.App.-Dallas 1995, no writ). However, parental rights may not be terminated merely because a child might be better off living elsewhere. *In re D.M.,* 58 S.W.3d 801, 814 (Tex.App.-Fort Worth 2001, no pet.).

Section 263.307 sets out a number of factors that should be considered in determining whether a child's parent is willing and able to provide a safe environment. TEX. FAM.CODE ANN. § 263.307(b) (West 2008); *see In re R.R.,* 209 S.W.3d at 116. The listed factors that appear to be relevant to our review include the child's age and physical and mental vulnerabilities; whether there is a history of abusive or assaultive conduct by the child's family; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; and whether the

---

4. Mother does not direct any argument specif- ically to this section.

child's family demonstrates adequate parenting skills. *See* Tex. Fam.Code Ann. § 263.307(b)(1), (7), (10), (11), & (12); *see also Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976) (setting out nonexclusive factors relevant to a review of a finding on the best interest of a child).

#### b. discussion ·

██ At the time of trial M.V. was an eighteen-month old child; he had been in foster care since he was eight months old. There was evidence a child could be harmed because of being held by a mother who is being abused by the father and because of neglect when he crawls or walks into a harmful situation while the parents are not paying attention. There was also evidence that a child models observed domestic violence.

The Family Based Safety Services (FBSS) section of CPS was assigned to this case in October 2008. FBSS performed a risk assessment, and Mother agreed to a safety plan that included domestic violence counseling. There was testimony that Father initially refused to attend BIPP because the program required him to admit responsibility for his conduct, and he refused to do so because of pending charges. There was testimony Mother could not protect herself from harm from Father and therefore could not protect M.V. because she returned to a violent situation without "corrective measures," that is, corrections to Father's violence. Even though Father began BIPP classes, there was testimony he had acknowledged some but not all of the incidents of physical domestic abuse. Mother's then-current CPS counselor testified she had not seen a change in Mother's

behavior that led her to believe that, in the future, Mother would not leave the shelter again and return to Father.

Mother's CPS counselor testified that Mother was afraid of Father's reactions to information about "what was going on in her services" with CPS and that M.V. "was not really bonding" with Mother at that point in Mother's visits with M.V. In addition, there was evidence that M.V.'s foster mother was attentive to M.V.'s medical needs and his Indian cultural heritage. *See Holley,* 544 S.W.2d at 372 (emotional and physical needs of child now and in future and parental abilities of individuals seeking custody are factors in best interest of the child analysis).

Having rejected Mother's arguments concerning sufficiency of the evidence supporting the jury's findings as to the best interest of the child grounds for termination, we resolve her second issue against her.

### III. TIMELY FILING OF STATEMENT OF POINTS

In her first point, Mother contends she timely filed her appeal and statement of points. *See* Tex. Fam.Code Ann. § 263.405(b) (West 2008). The State agrees.[5] Thus Mother's first point is moot, and we do not address it. *See* Tex. R.App. P. 47.1.

### IV. VENUE

██ In her third issue, Mother contends that venue was improper in Collin County. *See* Tex. Fam.Code Ann. § 103.001(a) (West 2008) (venue for original suit is county where child resides, sub-

---

**5.** The trial court granted Mother's motion to extend time to file her statement of points. *See In re M.N.,* 262 S.W.3d 799, 804 (Tex. 2008) (applying rule of civil procedure 5

"good cause" standard to enlarge time to file statement of points pursuant to section 262.405(b)).

ject to certain exceptions). However, Mother did not object to venue in the trial court by written motion, or in any other way. *See* TEX.R. CIV. P. 86(1) (providing that an objection to improper venue is waived if not made by written motion and filed prior to or concurrently with any other plea, pleading, or motion except a special appearance); *see also In re R.V. Jr.,* 977 S.W.2d 777, 781 (Tex.App.-Fort Worth 1998, no pet.) (suit for termination of parental rights is a civil proceeding); TEX.R. CIV. P. 2 (rules of civil procedure govern "all actions of a civil nature," subject to certain exceptions). Because Mother failed to preserve her complaint with respect to any issue relating to venue, we need not address the merits of Mother's third issue. *See* TEX.R.APP. P. 47.1.

## V. PROCEDURAL DUE PROCESS RIGHT TO COUNSEL FOR AFFIDAVIT OF VOLUNTARY RELINQUISHMENT

■ In her fourth issue, Mother contends her constitutional procedural due process rights were violated because she was not afforded counsel before signing the affidavit of voluntary relinquishment of parental rights. She asserts in her brief that "the Trial Court's *decisions* not to appoint Appellant trial counsel until after she had already signed an affidavit of relinquishment lead to an 'erroneous deprivation' of rights." (Emphasis added.) Mother's brief cites several cases dealing with due process and the right to counsel, some of which address those issues in the context of proceedings to terminate parental rights.

Mother does not explain how the trial court *could* have appointed such counsel, as no court proceedings were pending at the time. Nor does she indicate any action or omission of the trial court-overruling an objection, denying a motion, failing to set a

hearing or to make a ruling—that evidences the "decisions" she complains of. Nor does Mother indicate whether or how her complaint was brought to the trial court's attention—by pretrial or mid-trial motion, objection, or even by a motion for new trial or another post-trial motion. *See* TEX.R.APP. P. 33.1 (preservation of appellate complaints). As Mother failed to preserve her complaint, we need not address the merits of her fourth issue. *See* TEX. R.APP. P. 47.1.

## VI. CONCLUSION

Based on our resolution of Mother's issues, we affirm the trial court's order of termination.