AFFIRM; and Opinion Filed August 20, 2013.



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

No. 05-12-01633-CV

**G.M., Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law**
**Hunt County, Texas**
**Trial Court Cause No. M-10451**

## MEMORANDUM OPINION

Before Justices O'Neill, Francis, and Fillmore
Opinion by Justice O'Neill

G.M. appeals an order requiring him to undergo in-patient mental health services for a period of time not to exceed ninety days. In his sole point of error, G.M. contends the evidence is legally and factually insufficient to support the commitment order. Because we conclude the evidence is both legally and factually sufficient to support the trial court's finding that G.M. was mentally ill and, that as a result of that mental illness, he was likely to cause serious harm to others, we affirm the trial court's order.

A judge may order a proposed patient to receive court-ordered temporary inpatient mental health services if the judge or jury finds, from clear and convincing evidence, that (1) the proposed patient is mentally ill; and (2) as a result of that mental illness the proposed patient is likely to cause serious harm to himself or others. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (West 2010). To be clear and convincing, the evidence must include expert

testimony and, unless waived, evidence of a recent overt act or continuing pattern of behavior that "tends to confirm" the likelihood of serious harm to the proposed patient or others. TEX. HEALTH & SAFETY CODE ANN. § 574.034(d) (West 2010).

Clear and convincing evidence is "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010); *State v. Addington*, 588 S.W.2d 569, 570 (Tex.1979) (per curiam). In evaluating evidence for legal sufficiency under this standard, we review all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *See K.E.W.*, 315 S.W.3d at 20; *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We resolve disputed fact questions in favor of the finding if a reasonable factfinder could have done so, and we disregard all contrary evidence unless a reasonable factfinder could not have done so. *K.E.W.*, 315 S.W.3d at 20; *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d at 266. In conducting a factual sufficiency review, we must give due deference to any evidence the fact-finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266; *In re A.T.*, ___ S.W.3d ___, 2013 WL 3461684, * 3 (Tex. App.—Dallas 2013, no pet.). We consider whether the disputed evidence is such that a reasonable fact-finder could not have resolved the disputed evidence in favor of its finding. *In re M.V.*, 343 S.W.3d 543, 546 (Tex. App.—Dallas 2011, no pet.). If the disputed evidence is so significant that a fact-finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

G.M. first asserts the evidence is insufficient because the State failed to present evidence of a recent overt act that tended to confirm G.M. was likely to cause serious harm to others. According to G.M., the State was required to present evidence of "actual harmful conduct." He

cites *State v. K.E.W.*, to support this proposition. However, the Texas Supreme Court expressly rejected this proposition in *K.E.W.* The Court held that words constituted overt acts under the statute and specifically that words foreshadowing violence can be sufficient to meet the requirements of the statute. *Id.* Further, the "overt act" need not itself prove the proposed patient is likely to harm himself or others, but must only "tend to confirm" such likelihood. "Tends" means 'to have leaning,' 'to contribute to' or 'have a more or less direct bearing or effect.' *K.E.W.*, 315 S.W.3d at 23 (citing Black's Law Dictionary 1507 (8th ed. 2004) and Webster's New Universal Unabridged Dictionary 1507 (8th ed. 2004)); *E.D.*, 392 S.W.3d at 392. A recent overt act by a proposed patient "tends to confirm" the patient poses a likelihood of serious harm to others if the overt act is to some degree probative of a finding that serious harm is probable, even if the overt act is not itself dangerous. *K.E.W.*, 315 S.W.3d at 24.

With these standards in mind, we turn to the evidence presented at the commitment hearing. At that time, G.M. was being held at Glen Oaks Hospital pursuant to a temporary order of protective custody. Dr. Raza Sayed testified he is a psychiatrist and a member of G.M.'s "treatment team." Sayed said G.M. had previously been a patient at the hospital, but was released to live in a group home. A couple of months later, G.M. committed an assault at the home. After being jailed for three days, police took G.M. to the hospital.

Sayed stated that he has evaluated G.M. and reviewed all of his medical records. In Sayed's opinion, G.M. is mentally ill and suffers from schizoaffective disorder. According to Sayed, G.M.'s diagnosis has been well documented over many years. People suffering from this disorder experience paranoid thoughts, hallucinations, and are at an increased risk of acting out, mood swings, and violent behavior. Sayed testified G.M. is experiencing "active hallucinations" and paranoid thoughts that others are trying to hurt him. In particular, G.M. told Sayed that he was "under attack." In Sayed's opinion, G.M.'s belief was part of his paranoia.

–3–

Sayed said that because of this paranoia, G.M. was likely to cause serious harm to others. He said G.M. has committed overt acts that cause him to believe G.M. poses such a danger. Specifically, G.M. is pacing in the middle of the night, going into other peoples' rooms, and responding to "internal stimuli." Sayed said G.M. has acted in threatening manner to both staff and patients. Hospital staff has had to redirect G.M. several times before he could get to the point of being "assaultive to others." He said the most recent occurrence of this behavior was two days previously.

Sayed also testified that G.M.'s medical history shows he suffered a traumatic brain injury in his past. Sayed said the brain injury has made G.M. more at risk of aggression and impulsivity. Sayed also testified that people with brain injuries can suffer "mood symptoms," but said they do not predominately exhibit psychotic symptoms, such as hallucinations. He acknowledged that it was "possible" for a person with a brain injury to suffer hallucinations, but that it was "quite rare." Sayed said he was not aware of any neurological testing done on G.M. to determine whether G.M.'s hallucinations were caused by a brain injury rather than his mental illness. Regardless, in Sayed's opinion, mental illness is the overriding factor causing G.M.'s psychosis.

According to G.M., the State failed to present evidence of an "overt act" tending to confirm that as a result of his mental illness, he was likely to harm others. He acknowledges there is some evidence he assaulted a member of the group home, [1] but contends this is not sufficient because the record is devoid of any facts or circumstances surrounding the assault. He further contends the State failed to present any other evidence of "actual dangerous behavior." As noted above, G.M. misstates the applicable requirement. Specifically, the State was not

_____

[1] Appellant also claims there was evidence presented at the hearing that he did not "actually assault" anyone, but only exhibited "body posturing." Appellant misstates the record. Sayed testified appellant did not actually assault anyone at the hospital, not that appellant did not commit the assault at the group home.

required to prove actual harmful conduct, but only an overt act that is to some degree probative of a finding that serious harm to others is probable.

Regardless, we conclude evidence appellant assaulted another patient at the group home is evidence of an overt act that was "to some degree probative" of a finding that serious harm to others was probable. Appellant was jailed following the assault, and banned from returning to the group home. When he was asked about the assault at the hospital, appellant explained he was "under attack." According to Sayed, G.M.'s belief was part of his psychosis and has caused him to act aggressively toward others. We disagree with appellant the assault could not satisfy the overt act requirement because appellant might have been appropriately responding to an attack. Rather, given the nature of appellant's mental illness, the assault was to "some degree" probative of a finding that serious harm to others was probable because of his illness.

But even if we agreed with G.M. that the assault did not satisfy the overt act requirement, G.M.'s statements and conduct at the hospital following the assault are sufficient. Specifically, appellant's verbal statements that he was "under attack," and evidence appellant was pacing in the middle of the night, mumbling, responding to outside stimuli, and entering other peoples' rooms were probative of a finding that that serious harm to others was probable if he was not treated.

Appellant further contends the evidence is legally insufficient because there was evidence that he had suffered a brain injury in the past and his behavior could have been the result of the brain injury, not his mental illness. However, according to Sayed, G.M.'s predominant condition was psychosis, and that it was his mental illness that caused his hallucinations and paranoia. Although Sayed acknowledged that a brain injury can cause hallucinations, he said that was rare. Viewing the evidence in the light most favorable to the trial court's finding, we conclude the

evidence is legally sufficient to allow the trial court to form the firm belief that G.M.'s behavior was the result of his mental illness.

We have also reviewed the evidence in a neutral light. Having done so, we cannot conclude the disputed evidence, including evidence that G.M. had a brain injury and brain injuries can cause hallucinations, is so significant that the trial court could not have reasonably formed the firm conviction or belief G.M.'s danger to others was the result of his mental illness. We resolve the sole issue against G.M. We affirm the trial court's order.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE

121633F.P05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

G.M., Appellant

No. 05-12-01633-CV    V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law, Hunt County, Texas
Trial Court Cause No. M-10451.
Opinion delivered by Justice O'Neill.
Justices Francis and Fillmore participating.

In accordance with this Court's opinion of this date, the trial court's order is **AFFIRMED**.

Judgment entered this 20th day of August, 2013.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE