

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-15-00155-CV

IN THE INTEREST OF B.H., A
CHILD

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 323-100058J-14

----------

## MEMORANDUM OPINION[1]

----------

S.H. (Mother) appeals the trial court's judgment terminating her parental rights to her son, B.H. (Braden).[2] In one issue, she contends that the evidence is legally and factually insufficient to support the judgment because it does not establish that the affidavit of relinquishment that she signed was voluntary and free from coercion, duress, fraud, or misrepresentation. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]To protect B.H.'s and S.H.'s anonymity, we use aliases. *See* Tex. Fam. Code Ann. § 109.002(d) (West 2014); Tex. R. App. P. 9.8(b)(2).

## Background Facts

Mother birthed Braden in April 2014. Approximately two weeks later, the Department of Family and Protective Services (the Department) filed a petition asking the trial court to name the Department as Braden's temporary sole managing conservator and seeking the termination of Mother's parental rights to him if their reunification could not be achieved.[3] The Department attached an affidavit to the petition. The affidavit explained, among other facts, that Mother and Braden had tested positive for illegal drugs upon Braden's birth, that Mother had "reported no prenatal care to the hospital," and that Mother had attempted to hide her pregnancy because of a history of miscarriages. The affidavit also stated that Braden had suffered from rapid breathing while in the hospital, that he was placed in Mother's care days after his birth, and that the Department had sought his removal from her custody after she again tested positive for illegal drugs and did not agree to temporary placement outside of her home.[4] The trial court named the Department as Braden's temporary sole managing conservator.

In June 2014, the Department filed a service plan for Braden that stated that the Department's permanency goal was family reunification. The Department also filed a family service plan in which it recognized Mother's love

---

[3]The petition named a man as Braden's alleged father. A paternity test later excluded him as the father. Mother eventually stated that she does not know the identity of Braden's father.

[4]The affidavit also explained that Mother's family members had declined to serve as placement options for Braden.

for Braden but stated that she had a history of drug abuse and had "very little social support from her family members." The family service plan assigned several tasks to Mother, including submitting to further drug tests and completing certain classes. The record indicates that Mother completed some requirements of the service plan but that drug tests continued to show illegal drugs use.

By November 2014, the Department represented that Mother was not adequately participating in services. In January 2015, the Department filed a document stating that its permanency goal had changed to termination of Mother's parental rights and Braden's adoption. That document explained that Mother had been unsuccessfully discharged from counseling and from outpatient drug treatment and had again tested positive for illegal drugs in a December 2014 test. An April 2015 report submitted by Braden's court-appointed special advocate explained that Mother did "not appear to understand the impact and consequences of her drug use."

On April 13, 2015, Mother signed an affidavit in which she relinquished her parental rights to Braden. She represented that it was in Braden's best interest to be placed for adoption and that she was therefore "freely, voluntarily, and permanently . . . [relinquishing] . . . all of [her] parental rights, privileges, powers, and duties." She recognized that once the trial court terminated her parental rights, she would "have no further say concerning" Braden. She also attested, "I want the Department . . . to present this Affidavit of Relinquishment of Parental Rights to the Court and tell the Judge this affidavit speaks for me." She

3

acknowledged that she could never revoke the affidavit, that she was signing the affidavit with the advice of counsel, and that her decision to sign the affidavit was accompanied with the "firm conviction that this decision [was] the best available alternative for [Braden]."

Based on Mother's affidavit of relinquishment, and after conducting a hearing on the same day that she signed it, the trial court rendered a judgment terminating her parental rights to Braden. In the judgment, the court found by clear and convincing evidence that Mother had executed an irrevocable affidavit of relinquishment of her parental rights and that termination of her parental rights to Braden is in his best interest. Mother brought this appeal.

## Voluntariness of Affidavit

Mother contends that the trial court erred by terminating her parental rights because the evidence is legally and factually insufficient to show that her affidavit of relinquishment was voluntary and free from coercion, duress, fraud, or misrepresentation. She argues that the affidavit was involuntary and coerced because in exchange for signing the affidavit, she was "promised that [Braden's] foster parents would set up a private Facebook account where they would 'post pictures or information about [Braden].'" She also appears to contend that the evidence is insufficient because she did not testify in open court about the voluntariness of her signature.

In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights,

4

privileges, duties, and powers normally existing between them, except the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (West 2014); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures." *In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982)). We strictly scrutinize termination proceedings in favor of the parent. *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *E.R.*, 385 S.W.3d at 554–55; *Holick*, 685 S.W.2d at 20–21.

Termination decisions must be supported by clear and convincing evidence. *See* Act of Mar. 26, 2015, 84th Leg., R.S., ch. 1, § 1.078, sec. 161.001(b), 2015 Tex. Sess. Law Serv. 18, 18–20 (West) (to be codified as an amendment to Tex. Fam. Code Ann. § 161.001) (hereinafter cited as Tex. Fam. Code Ann. § 161.001(b)); Tex. Fam. Code Ann. § 161.206(a); *E.N.C.*, 384 S.W.3d at 802. Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *E.N.C.*, 384 S.W.3d at 802.

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the challenged ground for termination was proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

5

Similarly, in reviewing the evidence for factual sufficiency, we determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the Department proved the statutory grounds for termination. Tex. Fam. Code Ann. § 161.001(b); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

For a trial court to terminate a parent-child relationship, the Department must establish by clear and convincing evidence that the parent's actions satisfy one ground listed in family code section 161.001(b)(1) and that termination is in the best interest of the child.[5] Tex. Fam. Code Ann. § 161.001(b); *see E.N.C.*, 384 S.W.3d at 803; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). A trial court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that termination is in the child's best interest and that the parent has voluntarily executed "an unrevoked or irrevocable affidavit of relinquishment of parental rights." Tex. Fam. Code Ann. § 161.001(b)(1)(K), (b)(2); *see also In re K.M.L.*, 443 S.W.3d 101, 113 (Tex. 2014) ("[I]mplicit in section [161.001(b)(1)(K)] is the requirement that the affidavit of parental rights be voluntarily executed."). The family code provides requirements for an affidavit of voluntary relinquishment as follows:

> (a) An affidavit for voluntary relinquishment of parental rights must be:
>
> > (1) signed after the birth of the child, but not before 48 hours after the birth of the child, by the

---

[5]Mother does not contest the sufficiency of the evidence to show that termination is in Braden's best interest.

parent, whether or not a minor, whose parental rights are to be relinquished;

  (2) witnessed by two credible persons; and

  (3) verified before a person authorized to take oaths.

(b) The affidavit must contain:

  (1) the name, county of residence, and age of the parent whose parental rights are being relinquished;

  (2) the name, age, and birth date of the child;

  . . . .

  (4) a statement that the affiant is or is not presently obligated by court order to make payments for the support of the child;

  (5) a full description and statement of value of all property owned or possessed by the child;

  (6) an allegation that termination of the parent-child relationship is in the best interest of the child;

  (7) one of the following, as applicable:

   . . . .

   (C) a statement that the child has no presumed father;

  (8) a statement that the parent has been informed of parental rights and duties;

  (9) a statement that the relinquishment is revocable, that the relinquishment is irrevocable, or that the relinquishment is irrevocable for a stated period of time;

   . . . .

(12) the designation of a prospective adoptive parent, the Department of Family and Protective Services, if the department has consented in writing to the designation, or a licensed child-placing agency to serve as managing conservator of the child and the address of the person or agency.

Tex. Fam. Code Ann. § 161.103(a)–(b) (West 2014).

We have examined Mother's affidavit of relinquishment, and it meets section 161.103's requirements, which is prima facie evidence of its validity. *See In re A.L.H.*, Nos. 14-14-01029-CV, 14-14-01030-CV, 2015 WL 3759162, at *1 (Tex. App.—Houston [14th Dist.] June 16, 2015, no pet.); *In re R.B.*, 225 S.W.3d 798, 804 (Tex. App.—Fort Worth 2007, no pet.). Mother nonetheless contends that the affidavit was involuntary.

An involuntarily executed affidavit is a complete defense to a termination suit based on section 161.001(b)(1)(K). *See K.M.L.*, 443 S.W.3d at 113; *see also In re C.E.*, No. 02-14-00054-CV, 2014 WL 3866159, at *5 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) (mem. op.). An affidavit is executed voluntarily when it is executed knowingly and intelligently. *See K.M.L.*, 443 S.W.3d at 113. A direct attack on a judgment terminating parental rights based on an unrevoked affidavit of relinquishment "is limited to issues relating to fraud, duress, or coercion in the execution of the affidavit." Tex. Fam. Code Ann. § 161.211(c) (West 2014); *see also Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.—Austin 2000) ("Since an affidavit of relinquishment waives rights of constitutional magnitude, it must be

made voluntarily, knowingly, intelligently, and with full awareness of the legal consequences." (citation omitted)), *pet. denied*, 53 S.W.3d 684 (Tex. 2001).

Mother concedes that the "face of the affidavit reflects that it was signed knowingly and voluntarily." Nonetheless, she premises her evidentiary sufficiency challenge on two grounds. First, she contends that her affidavit of relinquishment was not voluntary because she was made an unenforceable promise of "post-termination access to [Braden] through Facebook, including photographs of [him] and information about his well-being." But Mother does not direct us to any place in the record supporting this factual assertion, and in our careful review of the record, we have found no such support.

Instead, Mother directs us only to an unsigned, handwritten document that she attached to her brief but that does not appear in the record. We cannot consider such a document as a basis for reversing a trial court's judgment. *See* Tex. R. App. P. 34.1 ("The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record."); *Bencon Mgmt. & Gen. Contracting, Inc. v. Boyer, Inc.*, 178 S.W.3d 198, 210 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("[A]n appellate court may not consider matters outside the appellate record. The attachment of documents as exhibits or appendices to briefs is not formal inclusion in the record on appeal and, therefore, the documents cannot be considered." (citation omitted)); *see also LeBlanc v. Fed. Home Loan Mortg. Corp.*, No. 02-10-00004-CV, 2011 WL 856896, at *1 n.3 (Tex. App.—Fort Worth Mar. 10, 2011, no pet.) (mem. op.) ("[W]e will not consider the

9

exhibits that are attached to LeBlanc's brief and that are not also included in the record."). Thus, to the extent that Mother premises her evidentiary sufficiency challenge on her allegation that her execution of the affidavit of relinquishment was involuntary for the reason that it was based on an unenforceable promise of access to Braden through Facebook, we reject the challenge.[6]

The second contention upon which Mother appears to predicate her issue is that she signed the affidavit on the date of trial,[7] that she was not called as a witness, and that the "record . . . shows scant evidence, other than [a caseworker's testimony] that [the affidavit] was executed knowingly and voluntarily, that it was in actuality executed as such." At the hearing that the trial court conducted before rendering its judgment, the Department's caseworker assigned to Braden's case succinctly testified that she had no reason to believe that Mother's affidavit of relinquishment was not voluntary or was coerced. This

---

[6]The cases cited by Mother are distinguishable because in those cases, the record evidenced the alleged promises of post-termination contact. *See Jones v. Tex. Dep't of Protective & Regulatory Servs.*, 85 S.W.3d 483, 487, 492–93 (Tex. App.—Austin 2002, pets. denied) (considering a promise of continued contact that the mother testified about in a hearing on a petition for bill of review); *Queen v. Goeddertz*, 48 S.W.3d 928, 929–32 (Tex. App.—Beaumont 2001, no pet.) (analyzing a promise of future visitation that was expressed in the affidavit of relinquishment). We deny, as moot, the Department's "Motion to Strike Appendix to the Appellant's Brief."

[7]Mother does not cite authority supporting her proposition that a parent's signing an affidavit of relinquishment under the pressure of an impending trial proves that the affidavit is involuntary. *Cf. R.B.*, 225 S.W.3d at 803–06 (holding that the fact that parents were under considerable pressure to make a decision did not mean affidavits of relinquishment were the result of duress or other wrongdoing).

is not the only evidence affecting voluntariness, however, because in the affidavit itself, Mother swore that she was signing it freely and voluntarily; that she was permanently relinquishing all rights, privileges, powers, and duties with respect to Braden; that she would have no "further say concerning" Braden; that she did not desire to testify; that the affidavit was irrevocable; and that the Department was relying on her "promise that [she would] not attempt to reclaim [Braden]." Mother wrote her initials nine times by lines in the following paragraph:

> **"I REALIZE THAT I SHOULD NOT SIGN THIS AFFIDAVIT UNTIL I HAVE READ AND UNDERSTOOD . . . EACH WORD, SENTENCE, AND PARAGRAPH IN IT. I REALIZE THAT I SHOULD NOT SIGN THIS AFFIDAVIT OF RELINQUISHMENT IF THERE IS ANY THOUGHT IN MY MIND THAT I MIGHT SOMEDAY SEEK TO CHANGE MY MIND. I REALIZE THAT I SHOULD NOT SIGN THIS AFFIDAVIT OF RELINQUISHMENT IF I AM NOT THINKING CLEARLY BECAUSE OF ILLNESS, MEDICATION, MY EMOTIONAL STATE, OR ANY OTHER REASON. BECAUSE I REALIZE HOW IMPORTANT THIS DECISION IS FOR THE FUTURE OF MY CHILD, I HAVE PUT MY INITIALS BESIDE EVERY LINE OF THIS PARAGRAPH SO THAT IT WILL ALWAYS BE UNDERSTOOD THAT I HAVE READ THIS AFFIDAVIT OF RELINQUISHMENT, UNDERSTAND IT, AND DESIRE TO SIGN IT."**

We conclude that in light of the fact that the record contains no evidence of involuntariness, Mother's caseworker's testimony about Mother's voluntariness and Mother's statements in the affidavit reflecting on her voluntariness allowed the trial court to rationally form a firm belief or conviction that the affidavit was voluntary and was not procured by fraud, coercion, or duress. Therefore, we hold that the evidence is legally and factually sufficient to affirm the trial court's judgment terminating Mother's parental rights on the basis of her affidavit of

relinquishment. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(K); *K.M.L.*, 443 S.W.3d at 113; *J.P.B.*, 180 S.W.3d at 573; *C.H.*, 89 S.W.3d at 28; *A.L.H.*, 2015 WL 3759162, at *1–2; *In re A.C.*, No. 12-14-00122-CV, 2014 WL 6803987, at *3–4 (Tex. App.—Tyler Oct. 22, 2014, no pet.) (mem. op.) (holding that the evidence was sufficient to support termination of parents' rights when their affidavits of relinquishment contained language expressing voluntariness and the record contained no evidence of involuntariness); *In re M.V.*, 343 S.W.3d 543, 548 (Tex. App.—Dallas 2011, no pet.) (holding similarly). We overrule Mother's only issue.

## Conclusion

Having overruled Mother's sole issue, we affirm the trial court's judgment terminating her parental rights to Braden.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DELIVERED: October 8, 2015

12