

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00426-CV

_____

IN THE INTEREST OF M.H. AND M.H., CHILDREN

---

On Appeal from the 324th District Court
Tarrant County, Texas
Trial Court No. 324-690166-20

---

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

Appellant D.H. (Father) appeals the trial court's judgment terminating his parental rights to his daughters, M.H. and M.H.[1] In two issues, Father contends that the evidence is legally and factually insufficient to support the statutory grounds for termination, one of which authorized termination based on Father's endangering conduct. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E). Because we overrule Father's dispositive issue—his challenge to the endangerment ground—we affirm the trial court's termination order.

### II. BACKGROUND

Father is the sole surviving parent[2] of M.H. and M.H., who were approximately seven and five years old at the time of trial.

After the death of the girls' sibling in October 2020, the Texas Department of Family and Protective Services (the Department) removed the girls from Father's home and filed a petition seeking conservatorship and the termination of Father's

---

[1]To protect the anonymity of the children associated with this appeal, we use pseudonyms to refer to them and their family members. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

[2]The girls' mother (Mother) went missing in November 2021 and was found dead in January 2022.

parental rights.[3] In July 2022, the court signed an agreed final order naming the Department the girls' permanent managing conservator, naming Father a possessory conservator, and setting forth a possession schedule for Father.

Ultimately, because Father failed to engage with the girls on a regular basis or to complete his court-ordered service plan,[4] the Department determined that termination of his parental rights was in the girls' best interests. Consequently, it filed another petition for termination in April 2024.

Attached to the Department's second petition was the affidavit of Latia Reed, a permanency specialist with Our Community Our Kids (OCOK).[5] Reed's affidavit provided the following summary of the facts that led (1) to the girls' initial removal from the home and (2) to the Department's filing of its most recent petition to terminate Father's parental rights:

> On [March 25, 2020], according to medical staff and initial first responders, [Mother] had an odor of alcohol [o]n her breath when they arrived on scene. When interviewed by law enforcement, she admitted to drinking the night before [M.H. and M.H.'s brother, D.H.,] was found

---

[3]At the time of removal, Father and Mother were living together. The Department also sought the termination of Mother's parental rights, but as noted, she died during the pendency of this case. *See supra* note 2.

[4]At trial, Father denied that he had ever received a copy of his service plan.

[5]As our court has explained, "OCOK is a private provider of community-based care that contracts with the Department to provide 'foster[-]care case management, kinship, and family reunification services' in parts of the state, including Tarrant County." *In re M.M.*, No. 02-21-00153-CV, 2021 WL 4898665, at *2 n.4 (Tex. App.— Fort Worth Oct. 21, 2021, pet. denied) (mem. op.).

unresponsive[,] and she was the only adult in the home at the time. There was a bottle of alcohol found next to the air mattress. A[] [Family-Based Safety Services] case had recently closed that was addressing concerns for domestic violence [between Mother and Father]. Mother admitted [that] domestic violence [had] happen[ed] in the presence of the children and [that] this ha[d] not been the first incident. [Father] denied [the] allegations and stated there was pushing and shoving with [M]other in the presence of her children. Police reported being called to the home multiple times for similar incidents with the parents. [The] [c]hildren were not verbal and were unable to be interviewed. [Mother had] agreed not to allow [Father] to visit the children unless he was supervised by someone other than her. [Father] and [Mother] admitted [Father] would come to the residence frequently without another adult to supervise his contact. [Father] was not cooperative with the [D]epartment during the FBSS case and did not complete any services to mitigate the risk of harm to the children.

On October 15, 2020, the children were removed from the home of [Mother and Father]. They were placed in the home of [f]ictive [k]in [K.D. and C.D.]. . . .

. . . .

On December 20, 2020, [Father] was referred for Focus parenting, BIPP[6] classes, a drug and alcohol assessment, [r]andom drug screens, [Alcoholics Anonymous and Narcotics Anonymous], and individual counseling/psychosocial.

On May 5, 2021, the children were placed in a foster home due to [K.D. and C.D.'s] submitting [a] 30-day discharge notice, citing they were done with mom due to false reports and the latest report crossing the line accusing them of sexually abusing the children.

On September 20, 2021, the children were placed back [with K.D. and C.D.].

. . . .

---

[6]BIPP stands for Batterer's Intervention and Prevention Program. *Ex parte Obi*, 446 S.W.3d 590, 594 n.3 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (op. on reh'g) (citing *In re M.V.*, 343 S.W.3d 543, 547 (Tex. App.—Dallas 2011, no pet.)).

[On] March 9, 2022, a Family plan of service was updated for [Father, who] was again referred for services, as he did not previously complete any of the services on his last Family Plan. [Father] was sent for monthly drug screens since the case opened[] but only completed a drug and alcohol screen [on] February 4, 2021, which was positive . . . .

. . . .

[On] June 22, 2022, [Father] was unsuccessfully discharged from BIPP services[;] he did [not] consistently . . . engage with OCOK and did not attend any parent[–]child visit[s] until September 2022.

On December 20, 2022, another new Family Plan was created for [Father], and he was rereferred for services, as he did not complete any services on the previous family plan of service. He was sent for drug screens consistently but did not consistently complete the drug screens.

. . . .

On June 28, 2023, a letter was sent in [an] attempt to contact [Father] as he ha[d] not engaged with the agency or his children since December 2022. The letter was sent to his last known address[,] and multiple calls and texts were made in attempts to connect with [Father].

On September 27, 2023, the children were placed in an adoption motivated fictive kinship home with [K.M.,] . . . an acquaintance of the former kinship placement, [K.D. and C.D.]. However, the girls seemed to regress in school and behaviors while placed with [K.M.], and on January 16, 2024, an intake of abuse and neglect was received, and the girls were removed from the home.

On January 3, 2024, [f]amily finding was requested to locate new family members as well as the whereabout[s] of [Father]. No new family members were identified from the search.

On January 16, 2024, [M.H. and M.H.] were placed back with [K.D. and C.D.] due to a kinship breakdown in January 2024. [K.D. and C.D] agree with keeping the girls until a permanent placement for the girls is found[,] but they do not wish to keep the girls permanently, although they do wish to remain in the girls['] lives as their grandparents as they are the closest thing to family they know.

On February 5, 2024, [Father] was located at Tarrant County Jail due to having multiple assault charges against him for assaulting his current girlfriend and mother of his two younger children. OCOK was able to meet with [Father,] and he agreed he would reconnect with OCOK to work services and engage with [M.H. and M.H.] [Father] was released March 2024 and has not made himself available to OCOK or his children.

In September 2024, the trial court[7] conducted a bench trial on the Department's petition. At trial, the Department presented evidence—through three witnesses (namely, Reed, Father, and Reed's OCOK supervisor) and multiple exhibits—of Father's (1) failure to complete his service plan, (2) failure to engage consistently with M.H. and M.H. since they were removed from the home, (3) alleged neglectful supervision of certain other children he has with a different mother, (4) criminal history, and (5) history of domestic violence.

After hearing the evidence, the trial court signed an order terminating Father's parental rights to M.H. and M.H. In support of its termination of Father's parental rights, the trial court found by clear and convincing evidence (1) that Father had engaged in conduct or knowingly placed M.H. and M.H. with persons who engaged in conduct that endangered their physical or emotional well-being, *see* Tex. Fam. Code Ann. § 161.001(b)(1)(E), and (2) that Father had constructively abandoned M.H. and

---

[7]Pursuant to an agreed order, this case was referred to an associate judge, who conducted the bench trial. Under the terms of the agreed order, the parties waived their right to request a de novo hearing before the referring court. *See* Tex. Fam. Code Ann. § 201.015(g). Thus, Father appeals directly from the associate judge's ruling.

M.H., that the Department had made reasonable efforts to return the girls to Father, that Father had not regularly visited or maintained significant contact with the girls, and that Father had demonstrated an inability to provide them with a safe environment, *see id.* § 161.001(b)(1)(N). Further, the trial court found that termination of Father's parental rights was in the girls' best interests.[8] *See id.* § 161.001(b)(2). This appeal followed.

## III. DISCUSSION

In two issues, Father argues that the evidence is legally and factually insufficient to support the trial court's findings that the Department established grounds for terminating his parental rights under Subsections (E) and (N) of Family Code Section 161.001(b)(1). Because we conclude that there is sufficient evidence to support termination under Subsection (E) and because only one predicate finding under Section 161.001(b)(1) is necessary to support a judgment of termination, *id.* § 161.001(b)(1); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003), we need not—and therefore do not—determine whether the evidence was sufficient to support termination under Subsection (N), *see* Tex. R. App. P. 47.1; *In re E.P.C.*, 381 S.W.3d 670, 684 n.3 (Tex. App.—Fort Worth 2012, no pet.).

---

[8]On appeal, Father does not challenge the trial court's best-interest finding.

## A. Standard of Review

For a trial court to terminate a parent–child relationship, the party seeking termination—here, the Department—must prove two elements by clear and convincing evidence: (1) that the parent's actions satisfy one ground listed in Family Code Section 161.001(b)(1); and (2) that termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *Z.N.*, 602 S.W.3d at 545.

Due process demands the heightened standard of clear and convincing evidence because "[a] parental rights termination proceeding encumbers a value 'far more precious than any property right.'" *In re E.R.*, 385 S.W.3d 552, 555 (Tex. 2012) (quoting *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982)); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see also In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012). In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures." *E.R.*, 385 S.W.3d at 554 (citing *Santosky*, 455 U.S. at 747–48, 102 S. Ct. at 1391–92). For

the same reason, we carefully scrutinize termination proceedings and strictly construe involuntary-termination statutes in the parent's favor. *E.N.C.*, 384 S.W.3d at 802; *E.R.*, 385 S.W.3d at 563; *Holick*, 685 S.W.2d at 20–21.

To determine whether the evidence is legally sufficient in parental-termination cases, we look at all the evidence in the light most favorable to the challenged finding to determine whether a reasonable factfinder could form a firm conviction or belief that the finding is true. *Z.N.*, 602 S.W.3d at 545. The factfinder may draw inferences, but they must be reasonable and logical. *Id.* We assume that the factfinder settled any evidentiary conflicts in favor of its finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved, and we consider undisputed evidence even if it is contrary to the finding. *Id.*; *J.F.C.*, 96 S.W.3d at 266. That is, we consider evidence favorable to the finding if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). The factfinder is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

We must perform "an exacting review of the entire record" in determining the factual sufficiency of the evidence supporting the termination of a parent–child relationship. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). Nevertheless, we give due deference to the factfinder's findings and do not supplant them with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We review the whole record to decide

whether a factfinder could reasonably form a firm conviction or belief that the Department proved one or more of the conduct-specific grounds on which the termination was based and that the termination of the parent–child relationship would be in the child's best interest.[9]   Tex. Fam. Code Ann. § 161.001(b); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).   If the factfinder reasonably could form such a firm conviction or belief, then the evidence is factually sufficient.   *C.H.*, 89 S.W.3d at 18–19.

## B.  Endangerment Under Section 161.001(b)(1)(E)

### 1.  Applicable Law

To terminate a parent's rights under Subsection (E)—as the trial court did here—the factfinder must find that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endanger[ed] the physical or emotional well-being of the child."   Tex. Fam. Code Ann. § 161.001(b)(1)(E).   To "'endanger' means to expose to loss or injury, to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *accord In re A.O.*, No. 02-21-00376-CV, 2022 WL 1257384, at *8 (Tex. App.—Fort Worth Apr. 28, 2022, pet. denied) (mem. op.); *In re J.B.*, No. 02-21-00239-CV, 2021 WL 6144074, at *21 (Tex. App.—Fort Worth Dec. 30, 2021, pet. denied) (mem. op.).

---

[9]Because Father does not challenge the trial court's best-interest finding, *see supra* note 8, we do not address the sufficiency of the evidence to support this finding, *see* Tex. R. App. P. 47.1.

Conduct-based endangerment under Subsection (E) requires more than a "single act or omission"; it requires a "voluntary, deliberate, and conscious course of conduct." *J.B.*, 2021 WL 6144074, at *21; *In re R.H.*, No. 02-20-00396-CV, 2021 WL 2006038, at *13 (Tex. App.—Fort Worth May 20, 2021, no pet.) (mem. op.). As a course of conduct, evidence of endangerment under Subsection (E) "is not limited to actions directed towards the child," *In re J.F.-G.*, 627 S.W.3d 304, 315 n.43 (Tex. 2021) (quoting *J.O.A.*, 283 S.W.3d at 345), and may include "actions before the child's birth, actions while the child is not in the parent's presence, and actions while the child is in the Department's custody," *In re C.Y.*, No. 02-21-00261-CV, 2022 WL 500028, at *2 (Tex. App.—Fort Worth Feb. 18, 2022, no pet.) (mem. op.). Such actions are relevant because they "may 'create an inference that similar conduct could recur and further jeopardize a child's well-being.'" *Id.* (quoting *In re M.W.*, No. 02-21-00146-CV, 2021 WL 3679247, at *4 (Tex. App.—Fort Worth Aug. 19, 2021, pet. denied) (mem. op.)).

Evidence of the following actions or omissions has been held to support termination under Subsection (E): drug abuse, intentional criminal activity that exposes a parent to incarceration, domestic violence, want of self-control, and propensity for violence. *See In re A.N.*, No. 02-22-00036-CV, 2022 WL 2071966, at *3–4 (Tex. App.—Fort Worth June 9, 2022, pet. denied) (mem. op.) (drug abuse); *In re R.R.*, No. 14-19-00603-CV, 2020 WL 262725, at *7 (Tex. App.—Houston [14th Dist.] Jan. 16, 2020, pet. denied) (same); *In re V.V.*, 349 S.W.3d 548, 554 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (intentional criminal activity exposing parent to

incarceration); *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (domestic violence, want of self-control, propensity for violence).

## 2. Evidence of Father's Conduct-Based Endangerment

Here the record contains the following evidence supporting the trial court's Subsection (E) finding:

- In February 2023, Father filed a plea in bar in a pending criminal proceeding whereby he admitted guilt on a charge of possession of a controlled substance;

- In June 2023, Father was arrested for domestic violence;

- In June 2023, the Department found that it had reason to believe that Father had neglectfully supervised certain other children that he has with a different mother;[10]

- In July 2023, Father pleaded guilty to assault causing bodily injury and was placed on deferred-adjudication community supervision;

- In March 2024, Father was adjudicated guilty of assault causing bodily injury;

- In May 2024, Father pleaded guilty to a felony assault-causing-serious-bodily-injury charge and was sentenced to two years' confinement with an expected release date in 2026; and

- Father testified that he had been charged with domestic violence twice even after taking a domestic-violence class in 2022.

Giving due deference to the trial court's findings, *H.R.M.*, 209 S.W.3d at 108, we conclude that, based on this evidence, the trial court could reasonably have formed a

---

[10] *See In re P.N.T.*, 580 S.W.3d 331, 356 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (when reviewing an endangerment finding under Subsection (E), "the parent's treatment of other children must be considered").

12

firm conviction or belief that Father had engaged in a course of conduct that endangered M.H. and M.H.,[11] *see J.B.*, 2021 WL 6144074, at *21; *see also* Tex. Fam. Code Ann. § 161.001(b)(1)(E). Accordingly, the evidence is factually—and thus legally— sufficient to support the trial court's Subsection (E) finding.[12] *See C.H.*, 89 S.W.3d at 18–19.

Accordingly, we overrule Father's first issue.

## IV. CONCLUSION

Having overruled Father's dispositive issue, we affirm the trial court's termination order.

/s/ Dana Womack

Dana Womack
Justice

Delivered: December 12, 2024

---

[11]Father argues that his incarceration did not endanger M.H. and M.H. because he "did not have . . . actual control, care[,] or custody of [them]" when the Department filed its second petition to terminate his parental rights. But as noted, evidence of endangerment may include "actions before the child's birth, actions while the child is not in the parent's presence, and actions while the child is in the Department's custody." *C.Y.*, 2022 WL 500028, at *2. Thus, Father's intentional criminal activity that exposed him to incarceration constitutes evidence supporting the trial court's endangerment finding. *See id.*; *see also V.V.*, 349 S.W.3d at 554.

[12]"[I]f the evidence is factually sufficient, it is necessarily legally sufficient." *A.N.*, 2022 WL 2071966, at *2 (first citing *A.O.*, 2022 WL 1257384, at *8; and then citing *In re A.S.*, No. 02-16-00076-CV, 2016 WL 3364838, at *7 (Tex. App.—Fort Worth June 16, 2016, no pet.) (mem. op.)).