

# NUMBER 13-23-00362-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF D.W., A.W., I.W., I.W., CHILDREN

### On appeal from the County Court at Law No. 5 of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Justices Longoria, Silva, and Peña**
**Memorandum Opinion by Justice Peña**

Appellant S.S.W. (Mother) appeals a judgment terminating her parental rights to the children, D.W., A.W., I.W.1, and I.W.2.[1] The attorney ad litem for the children also appeals the judgment. In three issues, Mother argues that: (1) the judgment is void because trial did not commence before the lapsing of the statutory dismissal date; and there is legally

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, parents and children are referred to by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d). We designate I.W. as 1 and 2 for clarification purposes.

and factually insufficient evidence supporting the (2) the statutory termination grounds, and (3) that termination was in the children's best interest. The children's attorney ad litem argues in her sole issue that there is insufficient evidence supporting the trial court's best interest finding.[2] We affirm.

## I.     BACKGROUND

### A.     Pretrial Proceedings

Mother and her ex-husband D.W. (Father) are the parents of D.W., A.W., I.W.1, and I.W.2, who were aged eleven, seven, six, and four, respectively, at the time of trial. On May 27, 2021, appellee, the Texas Department of Family and Protective Services (the Department), filed a petition seeking to terminate Mother's parental rights to her four children. The petition was accompanied by an affidavit in support of removal alleging domestic violence and methamphetamine use by Mother and her paramour J.G. According to the affidavit, both Mother and J.G. had threatened to harm the children and used methamphetamine in their presence. A.W. was observed to have fresh bruises and cuts almost daily. A Department investigator visited the family's home and observed that holes were punched in the wall and that multiple doors were broken in half. The investigator also saw faint blood stains on the carpet. Mother had bruises and swelling on her face, arms, and shoulders. The Department sought removal of the children after Mother violated her safety plan multiple times which required her to always be supervised with her children and that J.G. not stay at the home overnight.

---

[2] The trial court also terminated the parental rights of the children's father, D.W. However, he does not appeal.

The trial court named the Department as the children's temporary managing conservator, and the statutory dismissal date was initially set at May 30, 2022. At a March 16, 2022 hearing, the trial court extended the dismissal date to November 26, 2022, pursuant to § 263.401(b) of the family code. *See* TEX. FAM. CODE ANN. § 263.401(b). On May 19, 2022, the trial court entered an order that J.G. be removed from Mother's home because it was necessary for the children's protection. The trial court also ordered that J.G. have no contact with the children.

At a September 28, 2022 hearing, the trial court ordered that the dismissal date be extended to March 26, 2023, pursuant to § 263.403 of the family code, allowing for a monitored return of the children to Mother. *See id.* § 263.403. Trial commenced on March 9, 2023, and resumed on June 1, July 7, and July 18, 2023. After trial commenced, on April 21, 2023, the children were removed again from Mother's care due to the Department's safety concerns.

## B.     Trial Record

Father testified that he was incarcerated at the time of trial for aggravated assault with a deadly weapon. He explained that in 2019, while living with Mother, he found Mother with another man and stabbed him. Mother's grandmother testified that the relationship between Father and Mother was "a violent relationship . . . and the children saw a lot."

A police report dated October 27, 2020, indicates that officers were called to the residence that evening and observed that Mother was bleeding from her nose and forehead and that she had a large contusion on her forehead. Mother told police she was assaulted by her boyfriend J.G. Mother reported that J.G. stomped on the family's cat

until its eyes bulged out. J.G. then kicked Mother three times on her side and stomach. J.G. then put a knife to Mother's throat and threatened to kill Mother and the children. Finally, J.G. took the cat into the bathroom and slit its throat before leaving the residence.

At trial, Mother testified that on the night of October 27, 2020, she and J.G. were using drugs, and they began fighting. She said the children were in the bedroom and did not witness the altercation. Mother signed an affidavit of non-prosecution concerning the incident. Mother stated she experimented with methamphetamine but was not "on it on it."

A review report filed in November 2022 and entered into evidence stated that Mother failed to inform the Department that J.G. was residing with her and that another domestic violence incident was reported in September of 2021. According to a subsequent review report, the children disclosed that J.G. was residing in the home. A therapist also advised the Department that Mother and J.G. were not making themselves available for counseling.

Denise Guerrero, A.W.'s first grade teacher, testified that on February 7, 2023, A.W. told Guerrero that J.G. was living with them but not to tell the Department caseworker. On February 15, A.W. told Guerrero that Mother beats A.W. and leaves bruises on her arm. On February 16, A.W. told Guerrero that Mother wanted to punch her the night before and Mother told the children that she wanted them to go away because she hated them. A.W. said that an abrasion on her knee was caused by Mother. On February 17, A.W. reported that J.G. tried to slap D.W. while walking to school. On March 1, Guerrero observed a dime-sized bruise to A.W.'s wrist. A.W. said she was late to school that day because Mother was beating the children.

4

Gina Morris, a counselor at the children's school, testified that A.W. told her that Mother beat the children and the family dog every night, and she showed Morris a bruise on her arm. A.W. told Morris she did not feel safe at home. A.W. told Morris that Mother pushed her on another occasion causing her to scrape her knee. Morris stated that I.W.1 who was in kindergarten was still wearing diapers. I.W.1 told Morris that his siblings were not at school that morning because they were hurt. I.W.1 then explained that Mother beat the children with a belt the night before and that Mother pulled I.W.2's hair. On April 20, A.W. reported that J.G. was hitting Mother again and that J.G. was drinking a lot. A.W. shared that Mother wears a sweater to hide bruises when she comes to the school. Morris also spoke to I.W.1 that day who said that Mother hits him with a belt and put hot sauce in his mouth so he would stop crying. I.W.1 stated that Mother also put hot sauce in I.W.2's mouth. I.W.2 stated that after the Department caseworker left the residence two nights ago, J.G. punched Mother in the face. On April 21, A.W. told Morris that Mother hits I.W.2 with a shoe all over his body.

The Department entered photographs into evidence showing that J.G. was at Mother's residence with the children on April 9, 2023, in violation of the court's no-contact order.

Naomi Quintero, a Department employee, testified that she became the family's Department caseworker at the beginning of April 2023. She conducted weekly visits to the home. On one visit she discovered J.G. hiding in a bedroom closet. On another visit, she observed I.W.1 and I.W.2 with full and saggy diapers. Quintero testified that A.W. got lice in January 2023 and that it remained untreated for months.

5

On April 21, 2023, the Department again removed the children from Mother's home due to safety concerns. On June 23, 2023, Christian Escamilla, a Department investigator, opened an investigation into I.W.1's abuse allegations. During an interview at the children's advocacy center, I.W.1 stated that Mother spanks him with a belt and that J.G. cusses at Mother. I.W.1 told his foster parents that J.G. and Mother strangled him with a belt.

Mother testified that she would be moving into a new apartment the following Monday. Mother admitted that J.G. would visit the family so he could see the children and give her money. Mother stated she is employed cleaning offices two to three days a week. Mother recently obtained a tattoo with J.G.'s name on her neck. Mother stated that she would not allow J.G. to physically abuse her in the future. Mother admitted that J.G. had a history of using methamphetamine.

J.G. has an extensive criminal history, including assault, theft, and drug offenses. J.G. was charged with continuous violence against the family, concerning a prior paramour. J.G. testified that he and Mother still speak, despite being ordered out of the home with the children previously. J.G. stated he is on medication to stabilize his mood because of his mood swings. J.G. failed to complete court-ordered services, including counseling and drug testing. J.G. only recently began submitting to testing, and he tested positive for marijuana.

At the time of trial, D.W. resided in a foster home in Houston. I.W.2 and A.W. resided together in a separate foster home in Houston. I.W.1 resided in a treatment foster home in Edinburg. Vanessa Test, a conservatorship specialist with the Department, testified that I.W.1 is suspected to have autism and that he receives special therapies in

his current placement, including behavioral and mental health therapy. Test testified that A.W. and I.W.2 had initial adjustment issues in their placement and that they believe they will return soon to Mother. Test stated that D.W. is adjusting well to his new placement. D.W. is diagnosed with oppositional defiant disorder, adjustment disorder, child neglect, and attention deficit hyperactivity disorder. D.W. is currently in therapy. Test stated that D.W., A.W., and I.W.1 want to return to Mother. I.W.2 did not communicate her wishes due to her age.

Test testified that the Department is concerned with returning the children to Mother because of the potential for ongoing domestic violence. She stated that the Department is also concerned about the children's aggressive behaviors and inappropriate discipline techniques used by J.G. and Mother. Test said that the main concerns with J.G. were anger management and domestic violence.

## C.    Trial Court's Ruling

The trial court signed an order terminating Mother's parental rights pursuant to Texas Family Code § 161.001(b)(1)(D), (E), (N), (O), and (P). *See id.* § 161.001(b)(1)(D), (E), (N), (O), (P). The trial court further found that termination of Mother's parental rights was in the children's best interests. *See id.* § 161.001(b)(2). This appeal followed.

## II.    STATUTORY DISMISSAL DEADLINE

In her first issue, Mother contends that the termination decree is void because the trial court lost jurisdiction when trial was not commenced after the statutory dismissal date.

## A. Standard of Review & Applicable Law

"Before a court may enter judgment against a party, the court must have obtained jurisdiction over that party pursuant to applicable rules or statutes." *Whatley v. Walker*, 302 S.W.3d 314, 321 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). A judgment is void when the court rendering judgment had no jurisdiction over the parties or property, no jurisdiction over the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act. *In re D.S.*, 602 S.W.3d 504, 512 (Tex. 2020). We review whether a trial court has jurisdiction de novo. *Joyner v. Joyner*, 352 S.W.3d 746, 749 (Tex. App.—San Antonio 2011, no pet.).

Section 263.401(a) of the family code provides that if a trial court fails to commence the trial on the merits or grant an extension within one year after the trial court appointed the Department as temporary managing conservator, the trial court's jurisdiction terminates, and the case is automatically dismissed. *See* TEX. FAM. CODE ANN. § 263.401(a) (providing that the trial court's jurisdiction ends on the first Monday after the first anniversary of the date the trial court rendered a temporary order appointing the department as temporary managing conservator); *In re G.X.H.*, 627 S.W.3d 288, 292 (Tex. 2021). However, § 263.401(b) provides that the trial court may extend its jurisdiction by an additional 180 days if extraordinary circumstances necessitate the child remaining in the Department's conservatorship and continuing the Department's appointment is in the child's best interest. *See* TEX. FAM. CODE ANN. § 263.401(b). This extension may be made "orally on the record or in some other writing." *In re G.X.H.*, 627 S.W.3d at 299.

Notwithstanding the provisions of § 263.401, the trial court may retain jurisdiction over a case if it: (1) finds that retention is in the best interest of the child; (2) orders a

8

Department-monitored return of the child to a parent; and (3) continues the Department as temporary managing conservator of the child. *See* TEX. FAM. CODE ANN. § 263.403(a); *see also In re A.H.J.*, No. 05-15-00501-CV, 2015 WL 5866256, at *2 (Tex. App.—Dallas Oct. 8, 2015, pet. denied) (mem. op.). If the trial court renders an order pursuant to § 263.403, it shall "schedule a new date, not later than the 180th day after the date the temporary order is rendered, for dismissal of the suit unless a trial on the merits has commenced." TEX. FAM. CODE ANN. § 263.403(b).

## B. Analysis

Mother argues that the trial court lost jurisdiction because trial commenced after the extended dismissal date of November 26, 2022. However, Mother fails to acknowledge that the trial court twice extended the dismissal deadline. First, on March 16, 2022, the trial court extended the dismissal date to November 26, 2022, including in its order that:

> Pursuant to § 263.401 (b), Texas Family Code, the Court finds that extraordinary circumstances necessitate the subject children, remaining in the temporary managing conservatorship of the Department and that continuing the appointment of the Department as temporary managing conservator is in the best interest of the subject children, an extension of not more than 180 days should be granted due to extraordinary circumstances, the case should be retained on the Court's docket and a new dismissal date should be scheduled and the suit should be set for final hearing on a date that will allow the court to render a final order before that dismissal date.

Then, on September 28, 2022, the trial court ordered a monitored return of the children to Mother finding it was in the children's best interest. *See id.* § 263.403. Trial commenced on March 9, 2023, before the new dismissal date of March 26, 2023. Because § 263.403 allows a trial court to retain jurisdiction beyond the provisions of § 263.401, trial was timely commenced, and the trial court's final judgment is not void. *See id.*; *see also In re K.R.*,

9

No. 07-20-00149-CV, 2020 WL 6266286, at *2 (Tex. App.—Amarillo Oct. 23, 2020, pet. denied) (mem. op.). We overrule Mother's first issue.

### III. SUFFICIENCY OF THE EVIDENCE

In her second issue, Mother argues there is legally and factually insufficient evidence supporting each termination ground. In Mother's third issue, and the children's sole issue, both parties argue there is legally and factually insufficient evidence supporting the trial court's best interest finding.

### A. Standard of Review & Applicable Law

Because of the fundamental rights at issue, due process requires that parental termination be supported by clear and convincing evidence. *In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014); *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002).

In parental termination cases, our legal and factual sufficiency standards honor this elevated burden of proof while respecting the factfinder's role. *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018) (citing *In re J.F.C.*, 96 S.W.3d at 264). "The distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered." *Id*. In a legal sufficiency review, we "cannot ignore undisputed evidence contrary to the finding, but must otherwise assume the factfinder resolved disputed facts in favor of the finding." *Id*. at 630–31 (citing *In re J.F.C.*, 96 S.W.3d at 266). Thus, "[e]vidence is legally sufficient if, viewing all the evidence in the light most favorable

10

to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true." *Id.* at 631 (citing *In re J.F.C.*, 96 S.W.3d at 266).

Factual sufficiency, on the other hand, requires us to weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *Id.* We "must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam)). Therefore, "[e]vidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id*. (citing *In re J.F.C.*, 96 S.W.3d at 266). Before parental rights may be involuntarily terminated, the trier of fact must find two elements by clear and convincing evidence: (1) that the parent committed one of the statutory grounds for termination found in § 161.001(b)(1) of the family code; and (2) that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012).

## B.    Statutory Grounds

"To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground." *In re N.G*., 577 S.W.3d 230, 232–33 (Tex. 2019) (per curiam). The Texas Supreme Court has held that, regardless of whether other grounds for termination are unchallenged on appeal, an appellate court must always review issues alleging the evidence was insufficient to support findings of endangerment under parts (D) or (E) of the family code

11

§ 161.001(b)(1). *In re N.G.*, 577 S.W.3d at 234, 237 (holding that "due process and due course of law requirements mandate that an appellate court detail its analysis for an appeal of termination of parental rights" on endangerment grounds because an endangerment finding "becomes a basis to terminate that parent's rights to other children" under § 161.001(b)(1)(M)). Therefore, we will first address the sufficiency of the evidence supporting the trial court's (D) and (E) findings.

### 1.    (D) & (E) Grounds

Subsection 161.001(b)(1)(D) allows termination when the evidence proves by clear and convincing evidence that the parent knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the child's physical or emotional well-being, and subsection 161.001(b)(1)(E) allows termination if the parent has engaged in conduct or knowingly placed the child with persons who engage in conduct which endangers the child's physical or emotional well-being. TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). "Subsection (D) addresses *the child's surroundings and environment rather than parental misconduct*, which is the subject of subsection (E)". *In re A.L.H.*, 624 S.W.3d 47, 56 (Tex. App.—El Paso 2021, no pet.) (quoting *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.)). Subsection (D) permits termination based on only a single act or omission. *In re V.A.*, 598 S.W.3d 317, 329 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). In contrast, subsection (E) requires evidence of a "voluntary, deliberate, and conscious course of conduct by the parent" and generally more than a single act or omission. *In re D.L.W.W.*, 617 S.W.3d 64, 78 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (quoting *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.)).

12

"For both of these provisions, 'endanger' means 'to expose to loss or injury; to jeopardize.'" *Id.* (quoting *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam)). "Although 'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id.* "It is enough if the youth is exposed to loss or injury or his physical or emotional well-being is jeopardized." *Id.* (quoting *In re P.E.W.*, 105 S.W.3d 771, 777 (Tex. App.—Amarillo 2003, no pet.)). "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well[-]being of a child." *In re S.A.*, 665 S.W.3d 59, 70 (Tex. App.—Tyler 2022, pet. denied) (first citing *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.); and then citing *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied)). Endangering conduct is not limited to actions directed towards the child. *Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

A parent's use of narcotics and its effect on her ability to parent may qualify as an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Domestic violence, want of self-control, and propensity for violence may also be considered as evidence of endangerment. *In re S.A.*, 665 S.W.3d at 70 (first citing *In re T.R.L.*, No. 10-14-00290-CV, 2015 WL 1020865, at *5 (Tex. App.—Waco Mar. 5, 2015, no pet.) (mem. op.); and then citing *In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied). "A parent's decision to continue living with someone who has committed instances of domestic violence may support an endangerment finding[.]" *In re O.E.R.*, 573

S.W.3d 896, 905 (Tex. App.—El Paso 2019, no pet.) (citing *In re M.V.*, 343 S.W.3d 543, 547 (Tex. App.—Dallas 2011, no pet.)).

2. **Analysis**

Here, there was significant evidence that the children were exposed to domestic violence on a constant basis, both before removal and during the children's monitored return to Mother. Prior to removal, J.G. was arrested after physically assaulting Mother in the presence of the children and brutally killing the family cat. Both Mother and J.G. engaged in methamphetamine use in and around incidents of domestic violence. *See In re J.O.A.*, 283 S.W.3d at 345. J.G. punched holes in the walls of the home and broke multiple doors in the home. According to a police report, Mother was observed with injuries to her nose and forehead and told officers that J.G. assaulted her by punching her in the face and kicking her. J.G. threatened to kill the children while under the influence of drugs. Despite J.G.'s assaultive conduct, Mother declined to press charges and continued to allow J.G. to remain in the home in violation of the Department's safety plan and the trial court's later no-contact orders. *See In re O.E.R.*, 573 S.W.3d at 905.

Multiple incidents of violence were reported from October of 2020, when the Department became involved, and May 26, 2021, the date of the removal. After the children were returned to Mother, J.G. continued to reside with them. A.W. made multiple outcries to her teacher and counselor regarding the ongoing violence in the home, including Mother's abuse of the children. A.W. stated that Mother beats the children and the family dog every night. A.W. revealed that Mother told the children that she wanted them to go away because she hated them. A.W. said that an abrasion on her knee was caused by Mother. She also reported that J.G. was hitting Mother again and that J.G. was

14

drinking a lot. A.W. reported that Mother wears a sweater to hide bruises when she comes to the school. I.W.1 stated that his siblings were not at school one day because Mother beat them with a belt the night before and that Mother pulled I.W.2's hair. I.W.1 revealed that Mother put hot sauce in his mouth so he would stop crying and that she did this to I.W.2 as well. A.W. reported that Mother hits I.W.2 with a shoe all over his body. A.W. had a recurring problem with lice that went untreated for months.

Considering the entire record, including evidence both supporting and contradicting the trial court's findings, we conclude that the contrary evidence is not so overwhelming as to undermine the court's finding that Mother both engaged in conduct that endangered her children's physical or emotional well-being and knowingly placed or knowingly allowed her children to remain in conditions or surroundings which endangered their physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E); *In re J.F.C.*, 96 S.W.3d at 261, 266; *see also In re N.J.H.*, 575 S.W.3d 822, 832–33 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (considering domestic violence in the home and a parent's propensity for violence as evidence of endangerment). Because the evidence is legally and factually sufficient to support both grounds, we need not address the sufficiency of the evidence supporting the remaining grounds. *See In re N.G.*, 577 S.W.3d at 232–33. We overrule Mother's second issue.

## C.    Best Interest

### 1.    *Holley* Factors

There is a strong, though rebuttable, presumption that keeping a child with a parent is in the child's best interest. TEX. FAM. CODE ANN. § 153.131; *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). We consider the following factors in determining whether

termination of parental rights is in a child's best interest: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) the programs available to assist the parties seeking custody; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions committed by the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions committed by the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The party seeking termination is not required to prove all nine *Holley* factors, and in some cases, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the best interest of the child. *In re C.H.*, 89 S.W.3d 17, 25, 27 (Tex. 2002). The Legislature has also provided guidance on factors for courts to consider. *See* TEX. FAM. CODE ANN. § 263.307. The same evidence that supports a termination ground may also be probative of the children's best interest. *In re C.H.*, 89 S.W.3d at 28 (first citing *Holley*, 544 S.W.2d at 370; and then citing *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976)).

### 2. Analysis

As to the first *Holley* factor, Mother notes that there is evidence that three of the children wish to return to Mother, although I.W.2 was too young to credibly express her desire. *See In re R.S.D.*, 446 S.W.3d 816, 818, 820 (Tex. App.—San Antonio 2014, no pet.) (finding that the child, who was "almost four years old" at the time of trial, was "too young to have stated his desires"). However,

> [a]lthough a child's love of his natural parents is a very important consideration in determining the best interests of the child, it cannot override

16

> or outweigh the overwhelming and undisputed evidence showing that the parents placed or allowed the child to remain in conditions, and engaged in conduct or placed the child with persons who engaged in conduct, which endangers the physical and emotional well-being of the child. The child's love of his parents cannot compensate for the lack of an opportunity to grow up in a normal and safe way equipped to live a normal, productive, and satisfying life.

*In re W.S.M.*, 107 S.W.3d 772, 773 (Tex. App.—Texarkana 2003, no pet.). In light of the unstable home environment provided by Mother, the trial court could have determined that this factor is neutral as to the children's best interest.

As to the second *Holley* factor, I.W.1 is suspected to have autism and he receives special therapies in a treatment foster home. D.W. is diagnosed with oppositional defiant disorder, adjudgment disorder, child neglect, and attention deficit hyperactivity disorder, and he receives therapy. There is no indication Mother could adequately address the children's needs due to the chaotic nature of the home environment. The trial court could find from the evidence that this factor supports a best interest finding.

Relevant to the third *Holley* factor, regarding emotional and physical danger, is Mother's admitted methamphetamine use. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) (noting that a parent's drug use supports a finding that termination is in the best interest of the child). Even more relevant is the evidence of ongoing domestic violence in the home. Despite the extreme and constant violence exhibited by J.G., Mother was either unable or unwilling to discontinue her relationship with J.G., even after she was ordered by the court to do so. Mother was untruthful with the Department regarding her relationship with him. At trial, she expressed her continued commitment to J.G. with a recently obtained tattoo with his name. Mother also routinely abused the children, who described nightly beatings. The trial court could have

17

determined from this evidence that, should Mother's rights not be terminated, the children would be in danger of physical harm now and in the future. *See* Tex. Fam. Code Ann. § 263.307(b)(7) (listing "whether there is a history of abusive or assaultive conduct by the child's family" as a best-interest factor); *In re J.I.T.P.*, 99 S.W.3d 841, 846 (Tex. App.— Houston [14th Dist.] 2003, no pet.) (holding that evidence of domestic violence supported a best-interest finding); *see also In re A.H.*, No. 04-15-00416-CV, 2015 WL 7565569, at *7 (Tex. App.—San Antonio Nov. 25, 2015, no pet.) (mem. op.) ("Evidence of the parents' history of domestic violence supports the trial court's best interests finding.").

As to the fourth *Holley* factor, "a fact[ ]finder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children." *In re O.E.R.*, 573 S.W.3d at 907–08 (citing *D.O. v. Tex. Dep't of Hum. Servs.*, 851 S.W.2d 351, 356 (Tex. App.—Austin 1993, no writ)). Mother routinely abused her children, failed to shield them from domestic violence, used methamphetamine in their presence, and failed to treat her children's mental and physical ailments. This evidence supports a conclusion that Mother has demonstrated poor parenting skills and that she failed to provide the children with a safe home environment.

As to the fifth, sixth, and seventh *Holley* factors, the evidence showed that the children's current caregivers were meeting their basic needs, while Mother showed no ability to protect the children from violence in the future. A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *In re G.A.C.*, 499 S.W.3d 138, 141 (Tex. App.—Amarillo 2016, pet. denied); *In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.— Dallas 2007, no pet.). These factors support a best interest finding. *See In re L.W.*, 609

S.W.3d 189, 205 (Tex. App.—Texarkana 2020, no pet.) (concluding that "Mother's inability to stay in one domestic violence program and her poor judgment in repeatedly returning herself and her children to her abuser" was evidence that "established a lack of parental abilities and a refusal to utilize available programs"). Regarding, the eighth and ninth *Holley* factors, Mother offered no credible excuse for her behavior in exposing the children to violence. *See In re O.E.R.*, 573 S.W.3d at 911. These factors support a best interest finding as well.

Considering all the *Holley* factors, we conclude that the evidence was legally and factually sufficient to rebut the strong presumption that keeping the children with their biological mother is in their best interest. *See* TEX. FAM. CODE ANN. § 153.131. We overrule Mother's third issue and the children's sole issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

L. ARON PEÑA JR.
Justice

Delivered and filed on the
29th day of January, 2024.